**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**ELKINS**

**JOHN OSBORNE CRANDELL III.,**

        **Plaintiff,**

**v.**                          **CIVIL ACTION NO. 2:18-CV-87**
                                       **JUDGE ALOI**

**HARDY COUNTY DEVELOPMENT AUTHORITY,**

        **Defendant.**

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTIONS TO DISMISS

This matter is before the undersigned pursuant to an Order of Case Referral (ECF No. 13) in conjunction with a Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (ECF No. 27). On November 21, 2018, Defendant filed a Motion to Dismiss, currently pending before the undersigned. Also, pending before the undersigned is Defendant's Motion to Dismiss Plaintiff's Amended Complaint filed on March 29, 2019. (ECF No. 58). For the foregoing reasons, the undersigned **DENIES** Defendant's Motion to Dismiss Plaintiff's Complaint (ECF No. 16) **as MOOT** because an Amended Complaint was filed and **GRANTS** in part and **DENIES** in part Defendant's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 58), as delineated below.

### I.      FACTUAL BACKGROUND

Plaintiff alleged that the Economic Development Administration (hereinafter "EDA"), of the U.S. Department of Commerce, contracted with Hardy County Rural Development Association (hereinafter "HCRDA") to diligently pursue development over an Industrial Park,

Wardensville Industrial Park, located in Hardy County, West Virginia.[1] (ECF No. 56, at ¶ 1). As a part of the agreement, Hardy County was a recipient of $980,000.00 Grant earmarked for land and industrial development. According to Plaintiff, the EDA Grant required that any land that received benefits of the funds needed to follow "Industrial Covenants and Restrictions" that were approved by the Assistant Secretary of the EDA. Id. at ¶ 2.

Plaintiff alleged that since conferring the grant to HCRDA, HCRDA sold property that had covenants and restrictions which contained definitions that were inconsistent than those required by EDA; HCRDA "tolerated uses non-compliant to those Covenants and Restrictions on some properties"; HCRDA sold properties with unapproved, non-compliant covenants and Restrictions; HCRDA sold properties with deeds without covenants or restrictions; HCRDA sold property that was located in the Industrial Park but claimed to be adjoining to the Industrial Park; HCRDA developed properties to retain the profit of lease income; and, HCRDA did not report sales of properties to the EDA required. Id. at ¶ 4a-d.

Plaintiff alleged that there is a "discord" between the defined location of the Industrial Park, the area described in the Covenants and Restrictions of the Industrial Park, and the actual areas that are subject to the Covenants and Restrictions. Id. at ¶ 9. Plaintiff also alleged that HCRDA wrongfully advertised the Industrial Park as a "business district" and allowed for the development of buildings designed for this purpose.

Plaintiff further alleged that he listed Parcels 3 and 4 in the Industrial Park for sale. Plaintiff alleges that HCRDA told Plaintiff that his real estate agent that "real estate sales signage is not permitted." Id. at ¶ 13. Plaintiff also alleged that HCRDA informs the real estate agent that

---

[1] The undersigned accepts the factual background as true for the purposes of the motion to dismiss and uses the factual analysis provided in Plaintiff's Amended Complaint (ECF No. 33) as it is the prevailing Complaint. See Procedural History.

the lots "were approved for electronic manufacturing." Id. at ¶ 14. The advertised price of the property was $135,000 and the Hardy County Tax Assessor valued the property at $129,000.00. Id. at ¶ 15. Plaintiff alleges that HCRDA approved action to engage in a forced sale because Plaintiff had failed to abide by Clause 8 of the Covenants and Restrictions. Id. Plaintiff then alleged that he provided HCRDA with documentation regarding the permitting of an existing building, which had allegedly been completed within one-year allowed. Id. ¶ 16. Plaintiff stated that HCRDA changed the reason for the forced repurchase, identifying that Plaintiff's approved project did not occur within the required time. Id. at ¶ 17.

Plaintiff states that HCRDA's attorney discussed with Plaintiff's attorney the issue of real estate sales sign usage and a there was a negotiation of an offer price based on the professional appraisal. Id. at ¶ 18. Plaintiff alleges that approximately two weeks later, HCRDA's counsel denied the request for signage approval. Id. at ¶ 19. Plaintiff alleges that his attorney then contacted HCRDA's attorney requesting confirmation that the request for signage is denied and the right to repurchase was still in effect, which prohibited a private sale. Id. at ¶ 20. Plaintiff alleged that HCRDA then evaded or denied access to documents contained in FOIA requests made by Plaintiff's counsel. Id. at ¶ 22. Plaintiff alleged that HCRDA was told that certain documents, relating to the Special Conditions, were no longer kept, but then visited the officer a week later only to find the document but was further denied access to HCRDA's minutes. Id. at ¶ 22. Plaintiff then alleged that HCRDA then gave him one more day to access the documents and that would fulfill his right to access the record of a public entity. Id. at ¶ 25.

Plaintiff alleged that following those incidents, Plaintiff was sent a letter by HCRDA's attorney stating that he has not been abiding by the landscape maintenance conditions as required

by the covenants, and further alleged that other land owners who are required to similarly maintain their landscape were not approached. Id. at ¶27. Further communication was made to discuss whether Plaintiff had sufficiently remedied the landscape issue. Id. ¶ 30. Plaintiff alleged that he did not get confirmation from HCRDA's attorney. Id. ¶ 34.

## II.    PROCEDURAL HISTORY

On August 29, 2018, Plaintiff filed a Complaint alleging that Defendant has failed to provide documents to him under West Virginia's Freedom of Information Act and HCRDA has committed fraud, conspiracy, and possession of false papers against the United States. (ECF No. 1). On September 20, 2018, Defendant filed its Answer denying the allegations contained in the Complaint. (ECF No. 9). On November 21, 2018, Defendant filed a Motion to Dismiss. (ECF No. 16). On December 21, 2018, Plaintiff filed his Response to Defendant's Motion to Dismiss (ECF No. 28). On January 7, 2019, Plaintiff filed a Motion to Amend the Complaint (ECF No. 33), which was granted on January 9, 2019. (ECF No. 38). On January 31, 2019, Defendant filed a Motion for Protective Order and Stay of Discovery until the final disposition of the pending Motion to Dismiss (ECF No. 50), which was granted on February 5, 2019. (ECF No. 51). On May 29, 2019, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 58, 59). On April 23, 2019, Plaintiff filed a Response in Opposition of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 63). On May 3, 2019, Defendant filed a Reply to Plaintiff's Response. (ECF No. 64).

### a.    Plaintiff's Complaint (ECF No. 1)

On August 29, 2018, Plaintiff filed a Complaint before this court. (ECF No. 1). Plaintiff alleged that the above factual background constituted a violation of 13 C.F.R. § 314.4-Authorized Use of Project Property; 13 C.F.R. § 309.1-Redistributions under parts 303, 305, and

206; Major Fraud Against the United States in violation of 18 U.S.C. § 1031; Conspiracy to commit offense or to defraud United States in violation of 18 U.S.C. § 371; Possession of False Papers to Defraud the United States in violation of 18 U.S.C. § 1002; Conspiracy Against Rights in Violation of 18 U.S.C. § 241; and Deprivation of Rights under Color of Law in violation of 18 U.S.C. § 242.

      **b.**      **Defendant's Motion to Dismiss (hereinafter "Initial Motion") (ECF No. 16)**

On November 21, 2018, Defendant filed its Motion to Dismiss and argued that the Complaint should be dismissed in its entirety for failure to state a claim. (ECF No. 16). Defendant next argued that that Plaintiff's cause of action pursuant to 13 C.F.R. §§ 314.3 and 309.1 must be dismissed because Plaintiff does not have standing to recover damages pursuant to these regulations. (Def. Mot. at 2). Defendant further argued that 18 U.S.C. §§ 241, 242, 371, 1031, and 1002 are criminal statutes that do not create a private cause of action. Id. 2-4.

Furthermore, Defendant argued that as a political subdivision, HCRDA has immunity from suit arising from the alleged intentional actions of Defendant. Id. at 4. Finally, Defendant argued that the Complaint should be dismissed for failure to state a claim and that Plaintiff's Complaint "contains nothing more than speculative legal conclusions that are unsupported by any applicable law to support his claims against Development Authority." Id. at 5.

      **c.**      **Plaintiff's Response to Defendant's Motion to Dismiss (hereinafter "Initial Response")**

On December 21, 2018, Plaintiff filed his Response to Defendant's Motion to Dismiss. Plaintiff argued that the facts supported in the Complaint and accompanying exhibits evidence that HCRDA's negative impact on the community. Plaintiff further states that West Virginia § 7-12-6 states the HCRDA can "sue and be sued" and that debts of this corporation is separate from

the county commission. Plaintiff alleges that neither a <u>Cort</u>[2] analysis nor a similar implied rights analysis was not done in Defendant's Motion. Plaintiff also alleged that Defendant "violated the contractual agreements of plaintiff's deed of property and attached Covenants and Restrictions, particularly but not limited to the loss of acreage of surrounding land in like industrial use and industrial use buffer zone, which is vital to the uses allowed by the Covenants and Restrictions."

Plaintiff also alleges that Defendant's argument regarding immunity under West Virginia Code § 29-12-5 are based on "irrelevant case law citations, omission of disqualifying sections within the same statutes cited by the defendant, ludicrous assertions which contort basic logic and justice, and impression of jurisdictionally of West Virginia Code in this Federal Court." Plaintiff further argues that the Economic Development Authority Requirements for Approve Projects 8th edition: General Conditions and the SPECIAL CONDITIONS for project #01-01-03226 extended powers and authorities of the Secretary of Commerce under 42 U.S.C. § 3211 to Plaintiff which allows Plaintiff to seek relief for a violation of said regulations.

### d.    Plaintiff's Amended Complaint (ECF No. 56)

On January 9, 2019, Plaintiff filed an Amended Complaint (ECF No. 56). In his Amended Complaint, Plaintiff alleged that Defendant committed Major Fraud against the United States in violation of 18 U.S.C. § 1031; Conspiracy to Commit Offense or to Defraud the United States in violation of 18 U.S.C. § 371; Possession of false papers to Defraud the United States in violation of 18 U.S.C. § 1002; Equal Rights under the law in violation of 42 U.S.C. § 1981; Conspiracy to Interfere with Civil Rights in violation of 42 U.S.C. § 1985; Proceedings in Vindication of Civil Rights in violation of 42 U.S.C. § 1988; and, Action for Neglect to Prevent in violation of 42 U.S.C. § 1986 as described in Paragraph's 4 through 7 of the Amended Complaint.

---

[2] <u>Cort v. Ash</u>, 422 U.S. 66, 79 (1975).

Plaintiff also alleged that Defendant committed Conspiracy against rights in violation of 18 U.S.C. § 241; Deprivation of Rights under Color of Law in violation of 18 U.S.C. § 242; Property Rights of Citizens in violation of 42 U.S.C. § 1982; Civil Action for Deprivation of Rights in violation of 42 U.S.C. § 1983; Conspiracy to Interfere with Civil Rights in violation of 42 U.S.C. § 1985; Proceedings in Vindication of Civil Rights in violation of 42 U.S.C. § 1988; Action for Neglect to Prevent in violation of 42 U.S.C. § 1986, as delineated in Paragraphs 13, 14, 15, 17, 21, 24, 25, and 27 of the Amended Complaint. Plaintiff further alleges that Defendant violated West Virginia Code 29B-1-C and 42 U.S.C. § 1983, 1985, 1988, and 1986 as delineated in Paragraphs 22, 24, and 25.

> **e.** **Defendant's Motion to Dismiss Plaintiff's Amended Complaint (hereinafter "Amended Motion") (ECF No. 58)**

On March 29, 2019, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 58). In Defendant's Amended Motion, Defendant incorporates its arguments presented in the Initial Motion (ECF No. 16). Defendant next argued that the new claims, in general, do not state a claim upon which relief can be granted. Defendant stated that there were no additional facts or argument made, but rather Plaintiff simply cited the Federal and West Virginia Codes.

Furthermore, Defendant argued that Plaintiff failed to state a claim for a violation of 42 U.S.C. § 1981 because Defendant does not allege that he was discriminated against as a result of his race or ethnicity as required under the statute. Defendant also argued that the claim for a violation of 42 U.S.C. § 1985 does not state a claim because Plaintiff failed to allege specific facts that demonstrate that HCRDA conspired to discriminate against him nor that he is part of a certain class, which is required under the statute. Defendant also argued that 42 U.S.C. § 1988

claim does not create a cause of action, but is simply meant to compliment Sections 1981, 1982, 1983, 1985, 1986, and 2000.

Finally, Defendant argued that Plaintiff has failed to adequately state a claim under West Virginia Code Section 29B-1-1 *et seq*. because Plaintiff has failed to "provide information with respect to the nature of the Plaintiff's Freedom of Information Act request, what the Development Authority did, or did not do, in response to the Plaintiff's Freedom of Information Act request, and most importantly how the Development Authority violated the Plaintiff's rights under the Freedom of Information Act." (ECF No. 59, at 12).

f.    **Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Amended Complaint (hereinafter "Amended Response") (ECF No. 63)**

On April 23, 2019, Plaintiff filed a Response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 63). Plaintiff argued in opposition of Defendant's Motion to Dismiss but stated that this Response incorporated any arguments that were contained in the Initial Response. Plaintiff further alleged that there are many viable courses of adjudication which Plaintiff believes can resolve this matter after review of the case. Plaintiff argued that Paragraph 6 of the Amended Motion "further highlights the depth and solidarity in contempt of law demonstrated by the defendant, its members and counsel."

g.    **Defendant's Reply to Plaintiff's Amended Response (ECF No. 64)**

On May 3, 2019, Defendant filed a Reply to Plaintiff's Response to Defendants Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 64). Defendant argued that after being thoroughly advised of his requirements to respond to survive a motion to dismiss, Plaintiff failed to provide any argument which was raised by Defendant. Defendant argues that Plaintiff "lists facts, and various Federal code sections, Federal regulations, and an incorrectly identified section

of the West Virginia Code, in an attempt to assert claims against" Defendant, but "fails to draw any correlation as to how those facts create claims under the listed law that demonstrate" that Defendant is liable. (ECF No. 64, at 3). Further, Defendant argued that "plaintiff's response simply concludes, without any support or explanation, that his claims are valid an must be allowed to proceed." Id.

## III.   ANALYSIS

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded material factual allegations. Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, the Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

However, although a complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). To survive dismissal for failure to state a claim, the complaint must raise a right to relief that is more than speculative. Id. In other words, the complaint must contain allegations that are "plausible" on their face, rather than merely "conceivable." Id. at 555, 570. A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "A document filed pro se is 'to be liberally construed' and 'a pro se complaint, however inartfully pleaded, must be

held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).

### a. Subject Matter Jurisdiction

Federal courts lack the authority to adjudicate a case absent subject matter jurisdiction. Basic statutory grants of federal court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. <u>Arbaugh v. Y&H Corp</u>, 546 U.S. 500, 501 (2006). Section 1331 provides for federal question jurisdiction, which is properly invoked by the plaintiff when the plaintiff pleads a colorable claim "arising under the Constitution, laws, or treaties of the United States." <u>Id.</u> (citing <u>Bell v. Hood</u>, 327 U.S. 678, 681-685 (1946)); <u>MotJuste Tirade of Vim Andre Juste v. Brennan</u>, 16 F. Supp. 3d 716, 725–26 (N.D.W. Va. 2014). Section 1332 provides for diversity of citizenship jurisdiction, which is properly invoked by the plaintiff when the plaintiff presents a claim between parties of diverse citizenship that exceeds $75,000, the current required jurisdictional amount. <u>Arbaugh</u>, 546 U.S. at 501. Federal courts lack federal question jurisdiction under the well-pleaded complaint rule when the federal question fails to appear on the face of the complaint. <u>MotJuste Tirade of Vim Andre Juste</u>, 16 F. Supp.3d at 25 (citing <u>Columbia Gas Transmission Corp. v. Drain</u>, 237 F.3d 366, 370 (4th Cir.2001)) (citation omitted). Moreover, federal question jurisdiction "may not be premised on the mere citation of federal statutes." <u>Id.</u> (quoting <u>Weller v. Dep't of Soc. Servs. for City of Balt.</u>, 901 F.2d 387, 391 (4th Cir.1990)).

### i. Breach of Contract Claim

Under the West Virginia state law, a breach of contract claim "requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages." <u>State ex rel. Thornhill Group, Inc. v. King</u>, 759 S.E.2d 795 (W. Va. 2014). "Moreover, a complaint that asserts the existence of a contract and a breach thereof with damages is sufficient to survive a

motion to dismiss." <u>State ex rel State Auto Property Insurance Companies v. Stucky</u>, 2016 WL 3410352, *5 (W. Va. 2016) (citing <u>Harper v. Bus Lines</u>, 185 S.E.2d 225 (W. Va. 1936)); <u>Ballock v. Costlow</u>, 2017 WL 9620421 (N.D.W. Va. Dec. 6, 2017).

The undersigned has liberally construed Plaintiff's true contention in the Complaint to be a breach of contract claim. Plaintiff alleges that he contracted with HCRDA for the sale of the property subject to the terms and conditions of the Covenants and Restrictions of the property, including a forced resale clause in the event the Covenants and Restrictions were not followed. Defendant stated in his Amended Complaint that "Defendant board of directors approved action to engage in a forced repurchase of plaintiff property in Wardensville Industrial Park for the 2004 undeveloped land purchase value . . . (failure to develop with and approved building within one year of purchase) of the Covenants and Restrictions." Amend. Compl. ¶ 15.

Plaintiff then alleged that there is "documented evidence that the defendant approved and participated in the execution of permitting for the existing building at the time of the plaintiffs purchase of the land from the defendant. Said building was allegedly completed well within the one-year allowance from time of purchase." Amend. Compl. ¶ 16. Plaintiff further alleges that "[D]efendant [then] restate[d] its basis for forced repurchase of the plaintiff's property as 'The HCRDA is exercising the option to repurchase the property based on the fact the (industrial business) project as approved did not happen.'" Amend. Compl. ¶ 17.  Plaintiff alleges that the Hardy County Tax Assessor valued the home at $129,000.00 and Defendant's offer in the forced sale was $29,000.00. Whether there is sufficient evidence to determine whether a breach of contract occurred, the undersigned, at a minimum, determined that Plaintiff has sufficiently plead a breach of contract claim.

### b. Supplemental Jurisdiction FOIA

Title 28 of the United States Code, Section 1367 states in pertinent part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Plaintiff has also alleged that Defendant violated West Virginia Code Section 29B-1-C. While this code section does not exist, the undersigned understands that Plaintiff is alleging that Defendant violated the West Virginia Freedom of Information Act ("FOIA"). West Virginia Code Section 29B-1-3 states:

(a) Every person has a right to inspect or copy any public record of a public body in this state, except as otherwise expressly provided by section four of this article.

(b) A request to inspect or copy any public record of a public body shall be made directly to the custodian of such public record.

(c) The custodian of any public records, unless otherwise expressly provided by statute, shall furnish proper and reasonable opportunities for inspection and examination of the records in his or her office and reasonable facilities for making memoranda or abstracts therefrom, during the usual business hours, to all persons having occasion to make examination of them. The custodian of the records may make reasonable rules and regulations necessary for the protection of the records and to prevent interference with the regular discharge of his or her duties. If the records requested exist in magnetic, electronic or computer form, the custodian of the records shall make copies available on magnetic or electronic media, if so requested.

(d) All requests for information must state with reasonable specificity the information sought. The custodian, upon demand for records made under this statute, shall as soon as is practicable but within a maximum of five days not including Saturdays, Sundays or legal holidays.

W. Va. Code § 29B-1-3.

This statute may be enforced under the following circumstances:

(1) Any person denied the right to inspect the public record of a public body may institute proceedings for injunctive or declaratory relief in the circuit court in the county where the public record is kept.

(2) In any suit filed under subsection one of this section, the court has jurisdiction to enjoin the custodian or public body from withholding records and to order the production of any records improperly withheld from the person seeking disclosure. The court shall determine the matter de novo and the burden is on the public body to sustain its action. The court, on its own motion, may view the documents in controversy in camera before reaching a decision. Any custodian of any public records of the public body found to be in noncompliance with the order of the court to produce the documents or disclose the information sought, may be punished as being in contempt of court.

(3) Except as to causes the court considers of greater importance, proceedings arising under subsection one of this section shall be assigned for hearing and trial at the earliest practicable date.

W. Va. Code § 29B-1-5.

Plaintiff has alleged that FOIA requests have been made by Plaintiff regarding EDA grant documents, Plaintiff's deed, and HCRDA minutes from board meetings. Plaintiff alleged that 1) on December 22, 2017, Defendant denied access to said documents; 2) on December 22, 2017, Defendant stated that those documents are no longer kept; and 3) on January 5, 2017, Defendant limited Plaintiff's access to said documents. Plaintiff further alleged that upon his visit to HCRDA's office to seek those documents, he located a document that Defendant had previously stated no longer existed. See Amend. Compl. ¶ 23. Plaintiff has alleged that a state corporation violated the state FOIA statute, but the undersigned **FINDS** that this claim can be brought in this Court under supplemental jurisdiction as the documents requested are seemingly directly related to Plaintiff's breach of contract claim. The undersigned further **FINDS** that Plaintiff has properly alleged that Plaintiff requested the documents concerning EDA grant documents, his deed, and HCRDA minutes, and has sufficiently pled that he was denied access to the documents.

     **c.**     **Plaintiff does not have standing to bring a cause of action under Authorized Use of Project Property and 13 CFR 309.1 Redistributions under parts 303, 305 and 306; authorized by 42 U.S.C. Code § 3211-Powers of Secretary.**

Plaintiff specifically argues that a "chain of authorization" was created allowing the authorities of the Secretary of Commerce, under 42 U.S.C. § 3211, to be extended to Plaintiff under the "General Conditions section of the Economic Development Authority Requirements for Approved Projects 8th editions: General Conditions and the Special Conditions for project #01-01-03226" contained in Exhibit 1 of the Complaint. Plaintiff also stated that the "primary source of authority in Department of Commerce grants and contracts" was "explicitly extended via directive in the General Conditions" to Plaintiff in the document titled "Covenants and Restrictions for Hardy County Rural Development Authority Industrial Parks in Wardensville Containing 18.63 Acres and Robert C. Byrd-Hardy County Industrial Park in Moorefield Containing 62.05 Acres in Phase 1 and Approximately 80 Acres in Phase 11" in Exhibit 2 of Plaintiff's Complaint.

The document states in pertinent part:

REMEDIES: If the Grantee herein or its successors, heirs or assigns or any lessee or occupant of any part of such subdivision or any other person or entity shall violate or attempt to violate any of the covenants, conditions and restrictions contained herein, it shall be lawful and permissible for the Hardy County Rural Development Authority or any owner or occupancy of realty adjacent to that real estate on which such violation is occurring or contemplated, or the owner or occupant of any other real estate in said Park, regardless of whether adjacent thereto, to prosecute any proceedings at law or in equity against the person, persons, or entity, violating any of these restrictions for any remedies that are available including, but not limited to, actions for injunctive relief and damages. The Hardy County Rural Development Authority, its successors or assigns, or any owner or occupant of real estate within the park shall be entitled to recover from any person, persons or entity violating or attempting to violate any of these covenants, conditions and restrictions all attorneys' fees, costs and expenses, incurred by said Hardy County Rural Development Authority or any owner or occupant of real estate within the park, with respect to securing the enforcement of or the compliance with these covenants, conditions and restrictions or with

respect to any actions, either at law or in equity, commenced by it for such purposes or purposes.

Plaintiff also stated that the authority to bring a cause of action was extended to him through 42 U.S.C. § 3211. This statute provides for the Powers of the Secretary of Commerce and details the duties that may be performed by the Secretary of Commerce. Upon review of these two documents, there is no reference creating a "chain of authority" that empowers Plaintiff with those authorities endowed to the Secretary of Commerce.[3] In fact, upon further review, the documents set forth allowances Plaintiff to seek relief against violators of the covenant, conditions and restrictions. (ECF No. 1-2). The documents do not contain evidence of such "chain of authority" as stated by Plaintiff.

Title 13 of the Code of Federal Regulations, Section 314.4, however, does create a cause of action for the Federal Government to seek redress for a violation for the unauthorized use of project property. This regulation states in pertinent part:

(a) Compensation of Federal Share upon an Unauthorized Use of Project Property.[4] Except as provided in §§ 314.3 (regarding the authorized use of Property) or 314.10 (regarding the release of the Federal Interest in certain Property), or as otherwise authorized by EDA, the Federal Government must be compensated by the Recipient for the Federal Share whenever, during the Estimated Useful Life of the Project, any Project Property is Disposed of, encumbered, or no longer used for the purpose of the Project; provided that for equipment and supplies, the requirements of 2 CFR part 200, including any supplements, shall apply.

(b) Additional Unauthorized Uses of Project Property. Additionally, prior to the release of the Federal Interest, Project Real Property or tangible Project Personal Property may not be used:

---

[3] Any discussion of the documents shall not be interpreted as a formal interpretation of the contract that allegedly exists between Hardy County and John Crandell. The purposes of this discussion are merely to rule on the pending Motions to Dismiss.

[4] Project Property is defined as "all Property that is acquired or improved, in whole or in part, with Investment Assistance and is required, as determined by EDA, for the successful completion and operation of a Project and/or serves as the economic justification of a Project. As appropriate to specify the type of Property referenced, this part refers to Project Property as "Project Real Property" or "Project Personal Property"."

(1) In violation of the nondiscrimination requirements of § 302.20 of this chapter or in violation of the terms and conditions of the Investment Assistance; or

(2) For any purpose prohibited by applicable law.

(c) Recovery of the Federal Share. Where the Disposition, encumbrance, or use of any Project Property violates paragraph (a) or (b) of this section, EDA may assert the Federal Interest in the Project Property to recover the Federal Share for the Federal Government and may take such actions as authorized by PWEDA and this chapter, including the actions provided in §§ 302.3, 302.16, and 307.21 of this chapter. EDA may pursue its rights under paragraph (a) of this section and this paragraph (c) to recover the Federal Share, plus costs and interest. When the Federal Government is fully compensated for the Federal Share, the Federal Interest is extinguished as provided in § 314.2(b), and EDA will have no further interest in the ownership, use, or Disposition of the Property, except for the nondiscrimination requirements set forth in § 314.10(d)(3).

Accordingly, while there is a private cause of action for the Federal Government to recover as a result of failure to abide by the regulations' requirements, there is no private right of action for Defendant to recover damages. The undersigned hereby **FINDS** that Defendant does not have standing to bring a cause of action for HCRDA's alleged failure to abide by contractual obligations and federal regulations under 13 C.F.R. §§ 300-315.

### d.        Failure to State a Claim Upon Which Relief Can be Granted

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. Neitzke v. Williams, 490 U.S. 319 (1989). Plaintiff alleges in his Amended Complaint that the various factual background in are cause for claims brought under 18 U.S.C. §§ 241, 242, 371, 1002 and 1031 and 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and 1988.

### 1. Criminal Statues 18 U.S.C. § 241, 242, 371, 1002, 1031

A private cause of action may arise from a criminal statue only when there is a "statutory basis for inferring that a civil cause of action of some sort lay in favor of someone." Cort v. Ash, 422 U.S. 66, 79 (1975). See also, Gonzalez v. United States, EP-14-CV-263-PRM, 2015 WL 13345624, at *6 (W.D. Tex. Sept. 14, 2015), aff'd, 681 Fed. Appx. 310 (5th Cir. 2017) (concluding the provisions of 18 U.S.C. §§ 1701-09 do not provide for a private cause of action). Here there is no indication that the criminal statutes provided in the Amended Complaint provide for a civil remedy, give rise to civil liability, nor authorize a private right of action.[5] Accordingly, the undersigned **FINDS** that the claims under the criminal statutes for which Plaintiff is seeking relief do not state a claim upon which relief can be granted.

### 2. 42 U.S.C. § 1981

Title 42, Section 1981 of the United States Code states that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

42 U.S.C. § 1981.

---

[5] While there are Civil Conspiracy and Fraud claims available, the allegations contained in Plaintiff's Complaint alleged "Major fraud against the United States," "Conspiracy to commit offense or to defraud United States." Plaintiff has alleged that the Fraud, Conspiracy to commit fraud, and possession of false papers were directed at the United States. Compl. at 10. Because Plaintiff specifically alleged that the injured party is the United States, the undersigned does not construe these claims to amount to Fraud and Conspiracy against the Plaintiff.

"The legislative history of the 1866 Act clearly indicates that Congress intended to protect a limited category of rights, specifically defined in terms of racial equality." Georgia v. Rachel, 384 U.S. 780 (1966). Plaintiff has only alleged that subsequent contracts which were entered into for the use and sale of properties that are located within the industrial park are different and/or interpreted differently than his contract. Plaintiff has not provided any information regarding either his race or his ethnicity nor does he provide for any explanation for the alleged difference in the interpretation and creation of subsequent contracts. See Saint Francis College v. Al-Khazraji, 481 U.S. 604 (1987) ("Although § 1981 does not itself use the word "race," the Court has construed the section to forbid all "racial" discrimination in the making of private as well as public contracts."); see also Kodish v. United Airlines, Inc., 463 F. Supp 1245 (D. Colo. 1979); League of Academic Women v. Regents of University of Cal., 343 F. Supp. 636 (N.D. Cal. 1972); Carr v. F.W. Woolworth Co., 883 F. Supp. 10 (E.D.N.C. 1992); Weseman v. Meeker County, 659 F. Supp. 1571 (D. Minn. 1987).

While the undersigned is required to liberally construe a *pro se* plaintiff's pleadings, the undersigned cannot assume that that the basis for the alleged discrimination was because of an individual's race or ethnicity. The undersigned must grant a motion when the claim fails to state a claim, as it does here. Accordingly, the undersigned **FINDS** that Plaintiff has failed to state a claim upon which relief can be granted as to Plaintiff's § 1981 claims.

### 3.  42 U.S.C. § 1983

A claim under 42 U.S.C. § 1983 allows for individuals who have been deprived of their "rights, privileges, or immunities secured by the Constitution and laws" by another person who is acting under color of law to seek redress for said injury. "In order to sustain a § 1983 claim, a plaintiff must prove that he or she was deprived of a constitutional right by a defendant acting

under color of state law." <u>Cook v. James</u>, 100 Fed App'x 178 (4th Cir. 2004) (citing <u>Adickes v.</u> <u>S.H. Kress & Co.</u>, 398 U.S. 144 (1970)). A litigant must allege that the violation constituted state action. To qualify as "state action," the conduct "must be caused by the exercise of some right or privilege created by the State of by a rule of conduct imposed by the State or by a person from whom the State is responsible," and the "party charged with [such conduct] must be a person who may fairly be said to be a state actor." <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982).

Plaintiff has not alleged the which constitutional right or federal right has been violated. Specifically, Plaintiff has alleged Paragraphs 13, 14, 15, 17, 21, 22, 24, 25, and 27 allege actions for a 42 U.S.C. § 1983, as follows:

13. Defendant informs Donald Hitchcock of Lost River Realty that real estate sales signage is not permitted;
14. Defendant informs Lost River Realty the plaintiff's lots "were approved for electronic manufacturing" and "This was the approved use.", to impress obligation to this very particular use;
15. Defendant board of directors approved action to engage in a forced repurchase of plaintiff property in Wardensville Industrial Park for the 2004 undeveloped land purchase value, based on clause #8 (failure to develop with and approved building within one year of purchase) of the Covenants and Restrictions. (Exhibit 8) The plaintiffs advertised price is $135,000. The Hardy County Tax Assessor valuation is $129,000. The defendants offer in this forced sale is $29,000;
17. The defendant now restates its basis for forced repurchase of the plaintiff's property as "The HCRDA is exercising the option to repurchase the property based on the fact the (industrial business) project as approved did not happen;"
21. Defendant attorney confirms the defendants ongoing assertion of rights over the plaintiff's property is still active;
22. Defendant Executive Officer evades or denies access to most documents of the FOIA requests, including access to EDA grant documents also promised in the plaintiff's deed as available in the defendant's office stating that the documents are no longer kept. (Exhibit 11);
24. Plaintiff is denied further access to HCRDA minutes of the in the HCRDA office;
25. After considerable negotiation between attorneys, the defendant attorney unilaterally determines that "one more day" of access to minutes, at a time

appointed at the defendant's convenience, will fulfill the plaintiffs right to access the record of this public entity; and,

27. By letter from attorney Bowers, defendant threatens new covenant-based action against the plaintiff regarding landscape maintenance (mowing). Other owners in the Industrial Park whose parcels receive the same mowing and maintenance standard, conducted by the same operator at the same time each year for decades, have not been approached similarly. Furthermore, parcel owners who have never mowed their parcels in decades, which includes property owned by defendant, have not been addressed in the same manner as the plaintiff.

Nowhere in the Amended Complaint does Plaintiff allege which constitutional right or federal right was violated by Defendant. Accordingly, the undersigned **FINDS** that the Plaintiff has failed establish an essential element of a 42 U.S.C. § 1983 claim and has therefore failed to state a claim upon which relief may be granted.

## 4.    42 U.S.C. § 1985

Title 42, Section 1985 (3) of the United States Code states:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

"To establish a claim under Section 1985(3), a plaintiff must establish: "(1) a conspiracy; (2) for the purpose of depriving him, either directly or indirectly, of equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." United Brotherhood of Carpenters and Joiners of America v. Scott, 463 U.S. 825 (1983). The conspiracy, itself, must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action" Id. at 829. The Supreme Court has refused to extend the applicability to commercial and economic motivation.

Plaintiff alleges that Paragraphs 4-7 support the conspiracy cause of action brought under 42 U.S.C. § 1985. Plaintiff has failed to allege to whom the conspiracy is between. The only entity named in the Complaint is HCRDA, which as Defendant alleges, is a public corporation. A corporation cannot conspire with itself—there needs to be a second co-conspirator. Bellamy v. Mason's Stores, Inc., 508 F.2d 504 (4th Cir. 1974). It is not in the purview of the undersigned's jurisdiction to guess or assume that certain facts or elements of a claim exist. The undersigned cannot assume that a second co-conspirator exists and guess who it may be. More importantly, Plaintiff has failed to allege that the "conspiracy" was based on his race or class. Accordingly, the undersigned **FINDS** that Plaintiff failed to plead two pertinent elements of a claim and thus has failed to state a claim upon which relief can be granted.

### 5.     42 U.S.C. § 1986

Title 42, Section 1986 of the United States Code states:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to

the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

42 U.S.C. § 1986.

Liability under Section 1986 is contingent on a Section 1985 claim. If a Section 1985 claim cannot withstand a motion to dismiss, the accompanying Section 1986 claim cannot either. Johnson v. Hettleman, 812 F.2d 1401 (4th Cir. 1987). Plaintiff's Section 1985 claim has not withstood a motion to dismiss, thus, the Section 1986 may not withstand the motion to dismiss.

### 6. 42 U.S.C. § 1988

Section 1988 does not create an independent cause of action. Osborne v. Carey, 2017 WL 939008 (S.D.W. Va. March 9, 2017); see also Scroder v. Volcker, 864 F. 2d 97 (10th Cir. 1988) (citing Moor v. County of Alameda, 411 U.S. 693 (1973)). The Complaint is not clear whether this claim that Paragraphs 4-7 and Paragraphs 13, 14, 15, 17, 21, 22, 24, 25, and 27 are seeking to a private cause of action under this Section or if Plaintiff is merely citing this Section as support for his request for attorney's fees. In the event that Plaintiff is attempting to seek a private cause of action under this Section, the undersigned **FINDS** that Plaintiff has not stated a claim upon which relief may be granted.

### IV. CONCLUSION

Accordingly, the undersigned hereby **DENIES** the Initial Motion to Dismiss (ECF No. 16) **as MOOT**; **GRANTS** Defendant's Amended Motion (ECF No. 58) as to the alleged

violations of the Federal Regulations established for the purposes of EDA's grant to HCRDA for lack of standing; **GRANTS** Defendant's Amended Motion as the allegations arising under the criminal statutes; **GRANTS** Defendant's Amended Motions as to the alleged violations under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and 1988 for failure to state a claim; and **DENIES** Defendant's Amended Motion to Dismiss as to the remaining claims.[6]

The Clerk of the Court is **DIRECTED** to provide a Copy of this Order of counsel of record and all parties proceeding *pro se*, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Date: May 10, 2019

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE

---

[6] For clarification, the remaining claims are 1) a breach of contract claim in which Defendant seeks recovery of $129,000.00 properly before the undersigned pursuant to diversity jurisdiction, and 2) a West Virginia Freedom of Information Act violation in which Plaintiff is alleging that Defendant failed to provide all documents requested which is before the undersigned pursuant to supplemental jurisdiction.