**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**ELKINS**

| | |
|---|---|
| **JOHN OSBORNE CRANDELL III.,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 2:18-CV-87** **(JUDGE ALOI)** |
| **HARDY COUNTY DEVELOPMENT AUTHORITY,** | |
| **Defendant.** | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 134) AND DENYING PLAINTIFF'S MOTION FOR STAY OF PROCESS (ECF NO. 151)

This matter is before the undersigned pursuant to an Order of Case Referral (ECF No. 13) in conjunction with a Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (ECF No. 27). On March 30, 2020, Defendant Hardy County Rural Development Authority ("HCRDA") filed a Motion for Summary Judgment (ECF No. 134) and a Memorandum in Support (ECF No. 135). The undersigned entered a Roseboro Notice (ECF No. 136) on March 31, 2020, notifying Plaintiff of his right to respond to Defendant's Motion. Following the granting of an extension of time to file responses, Plaintiff filed his Response (ECF No. 147) on May 14, 2020.

The undersigned held a Motion Hearing (ECF No. 149) on Defendant's Motion for Summary Judgment on May 27, 2020. Also pending before the undersigned is Plaintiff's Motion for Stay of Process (ECF No. 151) filed on May 27, 2020. Accordingly, for the reasons set forth herein, Defendant's Motion for Summary Judgment (ECF No. 134) is **GRANTED** and Plaintiff's Motion for Stay of Process (ECF No. 151) is **DENIED**.

## I.     BACKGROUND AND PROCEDURAL HISTORY

On November 16, 2004, Plaintiff purchased from the Hardy County Rural Development Authority ("HCRDA"), Lot 3 containing 3.4 acres and Lot 4 containing 1.18 acres in the Wardensville Industrial Park ("WIP") for $29,770.00. (*See* ECF No. 135-1 "Crandell Deed"). Plaintiff's Deed contained certain "Covenants and Restrictions for Hardy County Rural Development Authority Industrial Parks in Wardensville, containing 18.63 acres and Robert C. Byrd – Hardy County Industrial Park in Moorefield – containing 62.05 acres in Phase I and approximately 80 acres in Phase II." (*See* Crandell Deed, ECF No. 135-1 at 3-7). Specifically, the "Covenants and Restrictions" stipulated that the "building sites in the industrial park shall be used for manufacturing, processing, distribution or business of a kindred nature from and after the time of conveyance." (ECF No. 135-1 at 3). Further, the "Covenants and Restrictions" prohibited in pertinent part, the use of the lots purchased by Plaintiff for "residential, retail commercial or wholesale." *Id.*

However, prior to Plaintiff's purchase of the above referenced Lots in 2004, the Development Authority had sold many of the surrounding lots to other buyers.[1] The Wardensville Industrial Park ("WIP") consists of eleven lots. Lots 5, 6, 7, 8. 9, and 10 "are all subject to the 'General Business and Light Industrial' Covenants" and many of these lots contained commercial businesses such as hardware stores, a carwash, and a building used to store carnival equipment, that all pre-date Plaintiff's purchase of Lots 3 and 4 in 2004 and were both clearly and outwardly visible at the time Plaintiff made his purchase. (*See* Fn. 1; *See also* ECF No. 135 at 5-7; ECF No. 135-3, "Combs Affidavit"; ECF No. 135-5 "Kerr Deed"; ECF No. 135-6 "Affidavit of Donald J.

---

[1] *See for example* ECF No. 135-5, "Kerr Deed" showing Lot 5 purchased by Donald J. Kerr, Jr. and Anita A. Kerr on January 27, 1998. Donald Kerr owned and operated a convenience, hardware, auto parts store and gas station that he extended onto Lot 5 in 1999. (ECF No. 135 at 5). Kerr further constructed a car wash in May of 2003. Kerr's Deed for Lot 5 in the WIP contained "General Business and Light Industrial Covenants" recorded on January 27, 1998 with the Clerk of the County Court of Hardy County at Deed Book 45, page 776. (ECF No. 135 at 5; ECF No. 135-6; ECF No. 135-5).

Kerr, Jr."; ECF No. 135-7, "aerial photographs"). Further, the deeds as well as the covenants and restrictions associated with the lots surrounding Plaintiff's were public record and readily available to Plaintiff at the Hardy County Clerk's Office at the time he purchased Lots 3 and 4. (ECF No. 135 at 5-7). The only lots in the WIP "subject to the strictly Industrial Covenants are Plaintiff's Lots 3 and 4 and Lot 2 held by JCO, LLC." (ECF No. 135 at 7).

Plaintiff owned and operated a business called "Zap Pak" on Lot 3 in the WIP. (ECF No. 135 at 7; ECF No. 135-13 "Crandell Deposition" at pp. 41-42). Plaintiff's business ceased operating between 2008 and 2009. (ECF No. 135 at 7; ECF No. 135-15 "Crandell Deposition" at pp. 60-61). In the winter of 2017, Plaintiff listed his property for sale. (ECF No. 135 at 8; ECF No. 135-17, "Crandell deposition" at p. 137). Following Plaintiff listing his property for sale, he "received a letter from Mallie Combs, the Executive Director of the Development Authority dated February 27, 2017 informing Plaintiff the presence of a 'For Sale' sign for the Lot violated the Covenants." (ECF No. 135 at 8; ECF No. 135-17 "Crandell deposition" at p. 136).

On March 28, 2017, Defendant sent Plaintiff a letter offering to "re-purchase Lots 3 and 4 for $29, 770.00 pursuant to paragraph 8 of the Covenants." (ECF No. 135 at 8; ECF No. 135-20 "Repurchase Letter"). Plaintiff then retained Counsel and the Defendant "released Crandall from the repurchase provision of the covenant." (ECF No. 135 at 8; ECF No. 135-21 "Crandell deposition" at p. 130; ECF No. 135-22 "Release Agreement"). In December of 2017, Plaintiff began submitting Freedom of Information Act requests to Defendant. (ECF No. 135 at 9). Plaintiff's FOIA requests sought "eight different categories of records." (ECF No. 135 at 9; ECF No. 135-23).

On August 29, 2018, Plaintiff filed his original Complaint against the Defendant before this court. (ECF No. 1). On September 20, 2018, Defendant filed its Answer denying the

allegations contained in the Complaint. (ECF No. 9). On January 7, 2019, Plaintiff filed a Motion to Amend the Complaint (ECF No. 33), which was granted on January 9, 2019. (ECF No. 38). Plaintiff filed his Amended Complaint (ECF No. 56) on January 9, 2019. On May 29, 2019, Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 58, 59).

In his Amended Complaint, Plaintiff alleged that Defendant committed Major Fraud against the United States in violation of 18 U.S.C. § 1031; Conspiracy to Commit Offense or to Defraud the United States in violation of 18 U.S.C. § 371; Possession of false papers to Defraud the United States in violation of 18 U.S.C. § 1002; Equal Rights under the law in violation of 42 U.S.C. § 1981; Conspiracy to Interfere with Civil Rights in violation of 42 U.S.C. § 1985; Proceedings in Vindication of Civil Rights in violation of 42 U.S.C. § 1988; and, Action for Neglect to Prevent in violation of 42 U.S.C. § 1986 as described in Paragraph's 4 through 7 of the Amended Complaint.

Plaintiff also alleged that Defendant committed Conspiracy against rights in violation of 18 U.S.C. § 241; Deprivation of Rights under Color of Law in violation of 18 U.S.C. § 242; Property Rights of Citizens in violation of 42 U.S.C. § 1982; Civil Action for Deprivation of Rights in violation of 42 U.S.C. § 1983; Conspiracy to Interfere with Civil Rights in violation of 42 U.S.C. § 1985; Proceedings in Vindication of Civil Rights in violation of 42 U.S.C. § 1988; Action for Neglect to Prevent in violation of 42 U.S.C. § 1986, as delineated in Paragraphs 13, 14, 15, 17, 21, 24, 25, and 27 of the Amended Complaint. Plaintiff further alleges that Defendant violated West Virginia Code 29B-1-C and 42 U.S.C. § 1983, 1985, 1988, and 1986 as delineated in Paragraphs 22, 24, and 25. In support of the above referenced allegations set forth in his Amended Complaint (ECF No. 56), Plaintiff alleged the facts detailed below.

Plaintiff alleged that the Economic Development Administration (hereinafter "EDA"), of the U.S. Department of Commerce, contracted with Hardy County Rural Development Association (hereinafter "HCRDA") to diligently pursue development over an Industrial Park, Wardensville Industrial Park, located in Hardy County, West Virginia. (ECF No. 56, at ¶ 1). As a part of the agreement, Hardy County was a recipient of $980,000.00 Grant earmarked for land and industrial development. According to Plaintiff, the EDA Grant required that any land that received benefits of the funds needed to follow "Industrial Covenants and Restrictions" that were approved by the Assistant Secretary of the EDA. *Id.* at ¶ 2.

Plaintiff alleged that since conferring the grant to HCRDA, HCRDA sold property that had covenants and restrictions which contained definitions that were inconsistent than those required by EDA; HCRDA "tolerated uses non-compliant to those Covenants and Restrictions on some properties"; HCRDA sold properties with unapproved, non-compliant covenants and Restrictions; HCRDA sold properties with deeds without covenants or restrictions; HCRDA sold property that was located in the Industrial Park but claimed to be adjoining to the Industrial Park; HCRDA developed properties to retain the profit of lease income; and, HCRDA did not report sales of properties to the EDA required. *Id.* at ¶ 4a-d.

Plaintiff alleged that there is a "discord" between the defined location of the Industrial Park, the area described in the Covenants and Restrictions of the Industrial Park, and the actual areas that are subject to the Covenants and Restrictions. *Id.* at ¶ 9. Plaintiff also alleged that HCRDA wrongfully advertised the Industrial Park as a "business district" and allowed for the development of buildings designed for this purpose.

Plaintiff further alleged that he listed Parcels 3 and 4 in the Industrial Park for sale. Plaintiff alleges that HCRDA told Plaintiff that his real estate agent that "real estate sales signage is not

permitted." *Id.* at ¶ 13. Plaintiff also alleged that HCRDA informs the real estate agent that the lots "were approved for electronic manufacturing." *Id.* at ¶ 14. The advertised price of the property was $135,000 and the Hardy County Tax Assessor valued the property at $129,000.00. *Id.* at ¶ 15. Plaintiff alleges that HCRDA approved action to engage in a forced sale because Plaintiff had failed to abide by Clause 8 of the Covenants and Restrictions. *Id.* Plaintiff then alleged that he provided HCRDA with documentation regarding the permitting of an existing building, which had allegedly been completed within one-year allowed. *Id.* ¶ 16. Plaintiff stated that HCRDA changed the reason for the forced repurchase, identifying that Plaintiff's approved project did not occur within the required time. *Id.* at ¶ 17.

Plaintiff states that HCRDA's attorney discussed with Plaintiff's attorney the issue of real estate sales sign usage and a there was a negotiation of an offer price based on the professional appraisal. *Id.* at ¶ 18. Plaintiff alleges that approximately two weeks later, HCRDA's counsel denied the request for signage approval. *Id.* at ¶ 19. Plaintiff alleges that his attorney then contacted HCRDA's attorney requesting confirmation that the request for signage is denied and the right to repurchase was still in effect, which prohibited a private sale. *Id.* at ¶ 20. Plaintiff alleged that HCRDA then evaded or denied access to documents contained in FOIA requests made by Plaintiff's counsel. *Id.* at ¶ 22. Plaintiff alleged that HCRDA was told that certain documents, relating to the Special Conditions, were no longer kept, but then visited the officer a week later only to find the document but was further denied access to HCRDA's minutes. *Id.* at ¶ 22. Plaintiff then alleged that HCRDA then gave him one more day to access the documents and that would fulfill his right to access the record of a public entity. *Id.* at ¶ 25.

Plaintiff alleged that following those incidents, Plaintiff was sent a letter by HCRDA's attorney stating that he has not been abiding by the landscape maintenance conditions as required by the covenants, and further alleged that other land owners who are required to similarly maintain their landscape were not approached. *Id.* at ¶27. Further communication was made to discuss whether Plaintiff had sufficiently remedied the landscape issue. *Id.* ¶ 30. Plaintiff alleged that he did not get confirmation from HCRDA's attorney. *Id.* ¶ 34.

Further, Plaintiff alleged that Defendant violated West Virginia Code Section 29B-1-3, the West Virginia Freedom of Information Act ("FOIA"). Plaintiff alleged that FOIA requests have been made by Plaintiff regarding EDA grant documents, Plaintiff's deed, and HCRDA minutes from board meetings. Plaintiff alleged that 1) on December 22, 2017, Defendant denied access to said documents; 2) on December 22, 2017, Defendant stated that those documents are no longer kept; and 3) on January 5, 2017, Defendant limited Plaintiff's access to said documents. Plaintiff further alleged that upon his visit to HCRDA's office to seek those documents, he located a document that Defendant had previously stated no longer existed. *See* (ECF No. 56 at ¶ 23).

On May 10, 2019, the undersigned entered an Order (ECF No. 65) granting the Defendant's Motion to Dismiss (ECF No. 59) Plaintiff's Amended Complaint in part and denying it in part. After detailing the claims upon which the undersigned's Order granted dismissal, the undersigned clarified in Footnote 6 of the Order, that the "remaining claims are 1) a breach of contract claim in which Defendant seeks recovery of $129,00.00" and "2) a West Virginia Freedom of Information Act violation in which Plaintiff is alleging that Defendant failed to provide all documents requested." (ECF No. 65 at 23, Fn. 6).

Defendant filed a Second Motion to Dismiss (ECF No. 78, 79) Plaintiff's First Amended Complaint on July 5, 2019. On August 12, 2019, as a result of unclear assertions raised in

Plaintiff's Response (ECF No. 86) to Defendant's Second Motion to Dismiss, the undersigned entered an Order (ECF No. 88) directing Plaintiff to file a Second Amended Complaint, pursuant to Rule 15(a)(2). Plaintiff filed his Second Amended Complaint as directed on August 29, 2019 (ECF No. 90). On September 19, 2019, Defendant filed an Answer (ECF No. 93) to Plaintiff's Second Amended Complaint.

The undersigned entered a Scheduling Order (ECF No. 99) in this matter on November 26, 2019, in which the Court set the close of discovery for March 16, 2020 and Motions to be due by March 30, 2020. On December 17, 2019, Defendant filed a Motion to Dismiss Claims 40, 41, 42, 43, 45 and 46 of Plaintiff's Second Amended Complaint (ECF No. 109). Plaintiff filed a Response (ECF No. 113) to Defendant's Motion on January 8, 2020. The undersigned entered an Order (ECF No. 116) on January 23, 2020, granting in part and denying in part Defendant's Motion to Dismiss. In the Order, the undersigned granted dismissal on claims 40, 41, 42, 43, and 46, leaving only the claim contained in paragraph 45 of the Plaintiff's Second Amended Complaint. Therefore, following this Order (ECF No. 116), the remaining claims before the Court are a breach of contract claim and the Freedom of Information Act claim under W. Va. Code § 29B-1-5.

Discovery was completed by the parties on March 16, 2020 in accordance with the Scheduling Order (ECF No. 99). On March 30, 2020, Defendant Hardy County Rural Development Authority ("HCRDA") filed a Motion for Summary Judgment (ECF No. 134) and a Memorandum in Support (ECF No. 135). The undersigned entered a Roseboro Notice (ECF No. 136) on March 31, 2020, notifying Plaintiff of his right to respond to Defendant's Motion. Following the granting of an extension of time to file responses, Plaintiff filed his Response (ECF No. 147) on May 14, 2020.

The undersigned held a Motion Hearing (ECF No. 149) on Defendant's Motion for Summary Judgment on May 27, 2020. Plaintiff filed a Motion for Stay of Process (ECF No. 151) on May 27, 2020. Accordingly, this matter has been fully briefed and is ripe for disposition.

## II.   <u>CONTENTIONS OF THE PARTIES</u>

### A.  **Defendant's Motion for Summary Judgment**

First, Defendant argues that Plaintiff's "breach of contract claim is barred by the statute of limitations" under "W.Va. Code § 55-2-6." (ECF No. 135 at 10). In support, Defendant argues that breach of contract "claims are subject to the time limitations contained in W.Va. Code § 55-2-6 which provides 'that an action to recover on the breach of a written or signed contract must be brought within ten years 'after the right to bring the same shall have accrued.'" citing <u>Thomas v. Branch Banking & Trust Co.</u>, 443 F.Supp.2d 806, 809 (N.D.W. Va. 2006). Further, Defendant argues that in West Virginia, "the limitation period 'begins to run either when the errors take place or when the errors are first known or should have been known" citing <u>Harris v. Cnty, Comm'n of Calhoun Cnty</u>, 238 W. Va. 556, 557, 797 S.E.2d 62, 63 (2017); <u>McKenzie v. Cherry River Coal & Coke, Co.</u>, 195 W.Va. 742, 749, 466 S.E.2d 810, 817 (1995) (The statute of limitations begins to run when the breach of the contract occurs or when the act breaching the contract becomes known). (ECF No. 135 at 11).

Defendant argues Plaintiff contends the Defendant breached the "Covenants and Restrictions of Plaintiff's deed conveying Lots 3 and 4 by conveying Lots in the WIP which have the 'General Business Light Industrial Covenants,' that differ from the covenants incorporated therein, held by Plaintiff which contain 'Industrial Covenants.'" *Id*. As such, Defendant argues that a "breach of a covenant contained in a deed is analogous to a breach of contract" and therefore, the action "would accrue upon breach of the covenant." *Id*. Because Plaintiff purchased "Lots 3

and 4 in the WIP in November 2004" and "there were already two lots in the WIP with 'General Business and Light Industrial' Covenants" having been "recorded some six years prior to Plaintiff's purchase", Plaintiff "had constructive knowledge of the existence of 'General Business and Light Industrial' Covenants." *Id*. Accordingly, Defendant argues the "alleged violation of his restrictive covenants would have accrued upon his purchase of Lots 3 and 4." *Id*. Therefore, Defendant argues Plaintiff's filing of this action on August 29, 2018, exceeds the ten year statute of limitations under W.Va. Code § 55-2-6 given that Plaintiff purchased Lots 3 and 4 in 2004. *Id*. at 13

Second, Defendant argues that "Plaintiff's breach of contract claim must fail because Plaintiff cannot establish his claimed damages with reasonable certainty or that the damages resulted from the alleged breach of contract." (ECF No. 135 at 13). Defendant contends that "Plaintiff has failed to offer any evidence the existing Lots in the WIP which contain the 'General Business and Light Industrial' covenants resulted in a diminution of value of Plaintiff's Lot 3 and 4, or precluded him from selling Lots 3 and 4." *Id*. at 14. In addition, Defendant argues "Plaintiff has no competent evidence as to the value of his alleged damages, and thus cannot prove the same with reasonable certainty." *Id*.

Further, Defendant argues that "Plaintiff offers no competent evidence of what the property's value would be if all of the lots at WIP would be under strictly 'Industrial' covenants as compared to its value presently." *Id*. Accordingly, because Defendant argues "Plaintiffs claimed damages are purely speculative", Defendant states, "Plaintiff has failed to set forth any proof of the diminution in value of his lots or that the claimed damages were caused by the 'General Business and Light Industrial' covenants used in WIP" and requests summary judgment be entered.

Third, Defendant argues that the "Development Authority complied with its obligations under its Deed with Plaintiff." (ECF No. 135 at 14). Defendant contends that "Plaintiff's claim that all the Lots in the WIP were to be for Industrial use only is predicated upon Plaintiff's assertion that the United States Department of Commerce Economic Development Authority (hereinafter EDA) provided grant funding which would exclusively apply only to industrial land development by virtue of EDA Project No. 01-01-03226." *Id*. at 15-16. However, Defendant argues that the "WIP is not included within the boundary for Project No. 01-01-03226" and therefore, the EDA did not apply to the Lots purchased by Plaintiff in the WIP. *Id*. at 17. Accordingly, Defendant argues there was "no prohibition, contractual or legal, which precluded the Development Authority from designating some lots in the WIP as 'Industrial' such as the Plaintiff's Lots 3 and 4 and others such as Kerrs' Lot 5 and Arbaugh's Lot 8 as 'General Business and Light Industrial'" and Defendant has complied with its obligations under the Deed and covenants. *Id*. at 18.

Finally, as to Plaintiff's FOIA claim under W. Va. Code § 29B-1-5, Defendant argues that his requests have been responded to and Plaintiff has been afforded access to records responsive to his FOIA requests on five separate occasions, consisting of approximately 25 or more hours, at the Development Authority's offices. *Id*. at 19-20. Defendant contends that "Plaintiff was provided access to all documents responsive to his requests but was not provided the EDA Grant because the EDA Grant was destroyed after seven years." *Id*. at 20 (*See* ECF No. 135-3, "Combs Affidavit"). As such, Defendant argues Plaintiff has been afforded adequate and fair opportunity to review documents responsive to his FOIA request and his FOIA claims should be dismissed.

**B. Plaintiff's Response**

In his Response (ECF No. 147), Plaintiff reasserts his position that the "U.S. Department of Commerce Economic Development Authority (EDA) project #01-01-03226" applied to the

Lots Plaintiff purchased in the Wardensville Industrial Park ("WIP"). (ECF No. 147 at 1-2). As such, Plaintiff is of the position that the EDA, and therefore the lots contained in the WIP, were subject to the same strict Industrial covenants as his Lots 3 and 4 and were prescribed by the EDA. As such, Plaintiff's position is that the HCRDA violated its obligations under the EDA by allowing other lots in the WIP to have General Business and Light Industrial Covenants in their Deeds and should have been subject to the same strict Industrial Covenants as his Deed for Lots 3 and 4. Plaintiff contends that the allowance of commercial development and his view that HCRDA has violated its obligations for strict Industrial development under the EDA has caused his property, Lots 3 and 4, to be unmarketable and has caused his property to suffer a diminution in value. (*See generally* ECF No. 147).

Plaintiff details at length the Defendant HCRDA's background and history of obtaining the EDA grant for project #01-01-3226 in his Response (ECF No. 147). Plaintiff details the minutes of HCRDA meetings from the 1990's. (*See* ECF No. 147 at 4-10 detailing history between 1992-1996 and ECF No. 147 at 10-11 detailing history between 1997-2004).

While the undersigned appreciates Plaintiff's argument regarding the history of the EDA and has considered it herein, the undersigned finds it is not relevant evidence for purposes of Plaintiff's claims in this action, a breach of contract of a Deed executed between Plaintiff and Defendant in 2004 containing certain covenants and restrictions and Plaintiff's claims under FOIA.

Turning to the substantive arguments set forth in Plaintiff's Response (ECF No. 147 at 30-44), Plaintiff argues that the Defendant "implies, without proof and without definitive statement in carefully phrased language by its council, that there is no link between the grant of EDA 01-01-03226 and Wardensville Industrial Park by claiming specifically that the plaintiff has no evidence, not that definitively that there is no link." (ECF No. 147 at 30). Plaintiff argues that the background

provided along with "abundant evidence, proves resoundingly" that "WIP must be associated with the Conditions of EDA 01-01-02336." *Id*. Plaintiff further contends that even "if there were no direct contractual linkage between EDA 01-01-03226 and Wardensville Industrial Park, there still remains significant relevance to the instant case to EDA 01-01-03226 and the HCRDA's compliance with conditions of the grant in that the plaintiff must represent to any potential buyer of his property that the Industrial Covenants are a contract represented and historically executed in good faith, as any factors that might affect the value of the property are . . . required to be accurately represented at the time of sale." (ECF No. 147 at 31).

Regarding damages, Plaintiff states Defendant "refutes itself" in arguing Plaintiff cannot establish damages by "listing plaintiff's earlier itemization of legal expenses legal expense as exhibit in the defendants final list of exhibits." (ECF No. 147 at 32). Plaintiff also asserts that the "stress and demands of this dispute" have caused "untimely and profound impact on the plaintiff's health and well-being" and have caused "painful, exhausting, and emotionally destabilizing effects of the plaintiff's infections" leading to a "loss of capacity to work on a regular and predictable schedule." *Id*. at 33. As such Plaintiff is claiming "physical and emotional stress expenses" and "additional pain and suffering" in the amount of "$500,000.00." *Id*.

Plaintiff further argues that he "was aware early in research of this dispute that those lots had been sold, and covenanted, well before plaintiff's purchase" regarding adjacent lots with commercial development noted by Defendant's in their Motion. Plaintiff states that these lots, Lot 5 and Lot 8, are "less relevant than most of the other lots that were sold **after** the plaintiff purchased Lots 3 and 4 in regards to direct breach of contract." *Id*. at 33 (emphasis in original). Plaintiff argues that in order for him to have known "which of the Kerr buildings were on WIP Lot 5 or

not, would have required research and survey of exactly where the line between Lot 5 and main store lay." *Id*. at 34. Plaintiff argues these lots remain mostly undeveloped to this day. *Id*.

Finally, regarding the statue of limitations issue, Plaintiff states that actions of the Defendant have been "actively and deliberately cloaked by the HCRDA making them not knowable." *Id*. at 36.

## III.   LEGAL STANDARD

Pursuant to Rule 56(c) of the Federal Rules of civil procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Under Rule 56(c) of the Federal Rules of Civil Procedure,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
 (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) ("Summary judgment 'should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.'" (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.   ANALYSIS

### A.  Statute of Limitations

W.Va. Code § 55-2-6 provides "that an action to recover on the breach of a written or signed contract must be brought within ten years 'after the right to bring the same shall have accrued." Thomas v. Branch Banking & Trust Co., 443 F.Supp.2d 806, 809 (N.D.W. Va. 2006).

The undersigned agrees with Defendant that at the time of Plaintiff's purchase of Lots 3 and 4 in

2004, Plaintiff knew or should have known of the commercial development on the adjacent Lots

5 and 8 and therefore, his cause of action regarding his perceived breach of the strict Industrial

covenants should have accrued at the time he purchased Lots 3 and 4. The prior deeds to the

adjacent lots with commercial development within the WIP were publicly recorded and Plaintiff

therefore, had constructive knowledge of their existence. As such, the undersigned does believe

Plaintiff has failed to meet his statute of limitations for a breach of contract claim by filing this

action in 2018, fourteen years after his purchase of Lots 3 and 4 in the WIP. However, given that

this Motion comes before the undersigned on Summary Judgment, the undersigned will proceed

to the merits of Plaintiff's claims.

**B.  Defendant is entitled to summary judgment because no genuine issue of material fact exists as to Plaintiff's breach of contract claim and Plaintiff has failed to make a showing sufficient to establish the existence of damages.**

As noted above, the Supreme Court stated in <u>Celotex</u> that "the plain language of Rule 56(c)

mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>,

477 U.S. at 322.

Here, the undersigned is of the opinion that Plaintiff has failed to make a showing sufficient

to establish the existence of an element essential to his case and on which he would bear the burden

of proof at trial, that being the element of damages. In order to establish a claim for breach of

contract under West Virginia law, a Plaintiff must prove the following elements by a

preponderance of the evidence: (1) the existence of a valid, enforceable contract; (2) that the

plaintiff has performed under the contract; (3) that the defendant has breached or violated its duties

16

or obligations under the contract; and (4) that the plaintiff has been injured as a result. *See* Exec. Risk, Inc. v. Charleston Area Med. Ctr. Inc., 681 F.Supp.2d. 694, 714 (S.D.W. Va. 209).

With respect to the fourth element, "[r]ecoverable damages in an action for breach of contract cannot be too remote, contingent or speculative, but must consist of actual facts from which a reasonably accurate conclusion could be drawn regarding the cause and amount of such damages." Exec Risk Inc., 681 F.Supp.2d at 726. Therefore, a Plaintiff must establish not only the amount of his damages but also that the damages were proximately caused by the defendant's breach.

Here, Plaintiff's primary claim is that Defendant HCRDA breached its duty and obligations under the EDA by allowing other lots in the WIP to have General Business and Light Industrial Covenants in their Deeds and should have been subject to the same strict Industrial Covenants as his Deed for Lots 3 and 4. Plaintiff contends that the allowance of commercial development and his view that HCRDA has violated its obligations for strict Industrial development under the EDA has caused his property, Lots 3 and 4, to be unmarketable and has caused his property to suffer a diminution in value. (*See generally* ECF No. 147).

However, Plaintiff has not offered any proof or evidence that his property has suffered any diminution in value as a result of Defendant's alleged breach regarding the Industrial covenants associated with Plaintiff's Lots 3 and 4. Further, Plaintiff has not offered any evidence that his property has become unmarketable. To the contrary, Plaintiff received an offer from Jeff Kerr, owner of the adjacent Lot 5 for approximately $25,000 and a subsequent offer from Mr. Kerr of $60,000 for the both Lots 3 and 4 which Plaintiff refused. (ECF No. 135-18 "Crandell deposition" at p. 142; ECF No. 135-6 "Kerr Affidavit"). Further, Plaintiff has not offered any evidence of what his property's value would be if all other lots within the WIP were held subject to strict Industrial

covenants in comparison to his property's present value. Plaintiff has not offered any expert opinion to suggest how the value of his property has been diminished as he claims by the Lots that have allowed for commercial development and are subject to the "General Business and Light Industrial" covenants. As such, the undersigned is of the opinion that Plaintiff's alleged damages are too speculative.

Further, regarding Plaintiff's argument that Defendant "refutes itself" in arguing Plaintiff cannot establish damages by "listing plaintiff's earlier itemization of legal expenses" (ECF No. 147 at 32) and his assertion that the "stress and demands of this dispute" have caused "untimely and profound impact on the plaintiff's health and well-being" is not sufficient to establish damages flowing directly and proximately from the alleged breach of contract under the covenants of Plaintiff's Deed. That bringing this law suit and litigating this action has caused "painful, exhausting, and emotionally destabilizing effects of the plaintiff's infections" leading to a "loss of capacity to work on a regular and predictable schedule" *Id.* at 33 are alleged damages that flow from Plaintiff's lawsuit in this matter. As such, the undersigned is of the opinion that Defendant is entitled to judgment as a matter of law as Plaintiff has failed to establish damages, an essential element of his breach of contract claim and Defendant's Motion for Summary Judgment (ECF No. 134) is **GRANTED**.

## C. Defendant is entitled to summary judgment because Plaintiff has failed to make a showing sufficient to establish the existence of a breach of contract by Defendant and Defendant has substantially complied with their obligations under the Deed in question.

As stated previously, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. An essential

element of a breach of contract claim is that the defendant has breached or violated its duties or obligations under the contract. <u>Exec Risk Inc.</u>, 681 F.Supp.2d at 714.

Here, the undersigned is of the opinion that Defendant has substantially complied with their obligations under the Deed for Lots 3 and 4 purchased by Plaintiff on November 16, 2004. As part of the Deed, Plaintiff agreed to be bound by the "Industrial Covenants" provided for in Plaintiff's Deed. (*See* ECF No. 135-1 "Crandell Deed"). Plaintiff's assertion that the EDA Project No. 01-01-03226 applied to the Lots in the WIP and were therefore, all subject to the strict Industrial Covenants of his Lots is without merit. To the contrary, Defendant has established that the WIP was not included within the boundary for Project No. 01-01-03226. (*See* ECF No. 135 at 16; ECF No. 135-29). As such, the undersigned finds no evidence that the Defendant was precluded from designating Lots in the WIP as "Industrial" such as Plaintiff's Lots 3 and 4 and others such as Lots 5 and 8 as "General Business and Light Industrial." Indeed, there is ample evidence that Lots 5 and 8 were sold **prior to** Plaintiff's purchase of Lots 3 and 4 **and** commercial business such as a car wash were present on these Lots at the time of Plaintiff's purchase. (*See supra* Fn. 1; *See also* ECF No. 135 at 5-7; ECF No. 135-3, "Combs Affidavit"; ECF No. 135-5 "Kerr Deed"; ECF No. 135-6 "Affidavit of Donald J. Kerr, Jr."; ECF No. 135-7, "aerial photographs").

Accordingly, the undersigned finds no evidence sufficient to establish a breach of contract in this matter and Defendant is entitled to judgment as a matter of law. As such, Defendant's Motion for Summary Judgment (ECF No. 134) is **GRANTED**.

**D. Defendant is entitled to summary judgment because no genuine issue of material fact exists as to Plaintiff's FOIA claims and Defendant has provided Plaintiff with proper and reasonable opportunities for examination of the records requested by Plaintiff.**

Plaintiff is alleging that Defendant violated the West Virginia Freedom of Information Act ("FOIA"). West Virginia Code Section 29B-1-3 states:

(a) Every person has a right to inspect or copy any public record of a public body in this state, except as otherwise expressly provided by section four of this article.

(b) A request to inspect or copy any public record of a public body shall be made directly to the custodian of such public record.

(c) The custodian of any public records, unless otherwise expressly provided by statute, shall furnish proper and reasonable opportunities for inspection and examination of the records in his or her office and reasonable facilities for making memoranda or abstracts therefrom, during the usual business hours, to all persons having occasion to make examination of them. The custodian of the records may make reasonable rules and regulations necessary for the protection of the records and to prevent interference with the regular discharge of his or her duties. If the records requested exist in magnetic, electronic or computer form, the custodian of the records shall make copies available on magnetic or electronic media, if so requested.

(d) All requests for information must state with reasonable specificity the information sought. The custodian, upon demand for records made under this statute, shall as soon as is practicable but within a maximum of five days not including Saturdays, Sundays or legal holidays.

W. Va. Code § 29B-1-3.

This statute may be enforced under the following circumstances:

(1) Any person denied the right to inspect the public record of a public body may institute proceedings for injunctive or declaratory relief in the circuit court in the county where the public record is kept.

(2) In any suit filed under subsection one of this section, the court has jurisdiction to enjoin the custodian or public body from withholding records and to order the production of any records improperly withheld from the person seeking disclosure. The court shall determine the matter de novo and the burden is on the public body to sustain its action. The court, on its own motion, may view the documents in controversy in camera before reaching a decision. Any custodian of any public records of the public body found to be in noncompliance with the order of the court to produce the documents or disclose the information sought, may be punished as being in contempt of court.

(3) Except as to causes the court considers of greater importance, proceedings arising under subsection one of this section shall be assigned for hearing and trial at the earliest practicable date.

W. Va. Code § 29B-1-5.

Plaintiff has alleged that FOIA requests have been made by Plaintiff regarding EDA grant documents, Plaintiff's deed, and HCRDA minutes from board meetings. Plaintiff alleged that 1) on December 22, 2017, Defendant denied access to said documents; 2) on December 22, 2017, Defendant stated that those documents are no longer kept; and 3) on January 5, 2017, Defendant limited Plaintiff's access to said documents. Plaintiff further alleged that upon his visit to HCRDA's office to seek those documents, he located a document that Defendant had previously stated no longer existed.

Plaintiff has been afforded access to records responsive to his FOIA requests on five separate occasions, consisting of approximately 25 or more hours, at the Development Authority's offices. (ECF No. 135 at 19-20). Defendant contends that "Plaintiff was provided access to all documents responsive to his requests but was not provided the EDA Grant because the EDA Grant was destroyed after seven years." *Id.* at 20 (*See* ECF No. 135-3, "Combs Affidavit"). Accordingly, the undersigned finds that Defendant has complied with its obligations under W.Va. Code Section 29B-1-3 and 5. Plaintiff has been afforded reasonable and adequate time as well as adequate access to inspect documents responsive to his FOIA requests, and has, as evidenced clearly by the record, obtained copies of several documents responsive to his requests. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 134) is **GRANTED**.

## V.   <u>ORDER</u>

For the reasons set forth herein, the undersigned hereby **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 134). Plaintiff's Motion for Stay of Process (ECF No. 151) is **DENIED AS MOOT**. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to enter a separate judgment order in favor of the Defendant. This case shall be stricken from the active docket of this Court.

The aggrieved party may, **within thirty (30) days after entry of this order**, file a notice of appeal with the United States Court of Appeals for the Fourth Circuit (www.ca4.uscourts.gov). **Failure to timely file a notice of appeal as set forth above will result in waiver of the right to appeal from a judgment of this Court. 28 U.S.C. § 636(c)(3); 28 U.S.C. § 2107(a).**

The Clerk is further **DIRECTED** to provide a Copy of Order to all counsel of record and to the *pro se* Plaintiff by certified mail, return receipt requested, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Date: June 26, 2020

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE